## TAUB v. WOODRUFF.

(Court of Civil Appeals of Texas. Dec. 22, 1910. Rehearing Denied Feb. 9, 1911.)

1. LIMITATION OF ACTIONS (§ 107*)—COMPUTATION OF TIME—STAY OF PROCEEDINGS.

In an action by a builder for the contract price, defendant, after answer, applied for a stay of proceedings pending the determination of a suit in another court by a subcontractor to establish a lien on the building, and an order was entered reciting the subcontractor's suit, and ordering that the further progress of the builder's suit be stayed until the further progress of the court. Held, that the stay was merely to prevent the case from coming to trial until the question of the subcontractor's lien was determined, and did not preclude the filing of an amended petition, and hence did not prevent the running of the statute of limitations as to claims for extras not mentioned in the original petition.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 517; Dec. Dig. § 107.*]

2. CONTRACTS (§ 353*)—BUILDING CONTRACT—ACTION—INSTRUCTIONS — SUPPORT IN EVIDENCE.

In an action by a builder for the contract price, the owner counterclaimed for delay. The contract required the builder to claim in writing an extension of time for completion within 24 hours after the delay occurred which entitled him to it. Much of the delay was caused by delay of a distant subcontractor to furnish millwork, which, in turn, was due to the failure of the architect to furnish plans and specifications. Plaintiff testified to asking the owner whether he required a written claim in relation to this delay, and that he replied that he did not; that the delay was due to the placing of the order for the millwork at a distance to get a better job; that he was more interested in getting a good job than in completion in the contract time. Held insufficient to warrant the submission of the issue of the owner's waiver of all claim of damages for delay from whatever cause, or of the claim of damage for delay in completion caused by delay in receipt of millwork, the waiver testified to being only of the written claim of an extension of time for completion.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1829–1844; Dec. Dig. § 353.*]

3. CONTRACTS (§ 287*)—BUILDING CONTRACTS—ARCHITECT'S CERTIFICATE OF COST—ADMISSIBILITY IN EVIDENCE.

Where the owner of a building forfeited the building contract under a provision thereof permitting him on certificate by the architect to terminate the contract for failure to properly prosecute the work and to complete the work at the builder's cost, the cost of so doing and any damages from the builder's breach of the contract to be certified by the architect, such certificate to be conclusive, the architect's certificates in the absence of any showing of bad faith or collusion with the owner were admissible in evidence in the builder's suit for compensation as against the objection that they were made after plaintiff's work on the building had ceased, and were merely ex parte and unsworn statements.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1344–1351; Dec. Dig. § 287.*]

---

**4. CONTRACTS (§ 287*)—BUILDING CONTRACTS —ARCHITECT'S CERTIFICATE—EFFECT OF BAD FAITH.**

If the architect acted in bad faith or arbitrarily in certifying to the builder's failure to perform looking to a forfeiture of the contract, or in certifying to the cost of completion, such certificates would not be admissible as evidence of the facts therein stated.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1344–1351; Dec. Dig. § 287.*]

**5. EVIDENCE (§ 471*) — OPINIONS — NONEXPERTS.**

A nonexpert witness in a contractor's suit for compensation may not give his opinion as to the character of the work done on defendant's building.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471.*]

**6. CONTRACTS (§ 232*)—BUILDING CONTRACTS —CHARGES—EXTRAS.**

Where a building contract provided that no changes or alterations should be made in the work shown or described in the drawings or specifications, except on written order of the architect, and, when so made, the value thereof should be computed by the architect, the contractor is not entitled to compensation for extra work unless ordered in writing by the architect, and the value thereof computed by him, except where the architect acts arbitrarily and in bad faith in computing or refusing to compute the value of such extra work.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1071–1097; Dec. Dig. § 232.*]

Appeal from District Court, Harris County; W. P. Hamblin, Judge.

Action by W. E. Woodruff against J. N. Taub. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

L. B. Moody, for appellant. Baker, Botts, Parker & Garwood, for appellee.

PLEASANTS, C. J. This suit was brought by appellee against appellant to recover a balance alleged to be due upon a contract for the construction by appellee of a dwelling house for the appellant, and to recover certain items of special damage alleged to have been sustained by appellee by reason of acts and omissions on the part of appellant in the performance of said contract.

The petition alleges that there was a balance due plaintiff on the contract price of the work, including amount due for extra work as provided in said contract, of $2,980.60, and that, in addition thereto, defendant is liable to plaintiff in the sum of $850 on account of delay and extra expense caused plaintiff in the performance of his contract by reason of the delay of defendant in furnishing plans and specifications for the work and the errors and mistakes in the plans and specifications furnished, and the failure of the defendant to pay for certain hardware which, under the agreement between the parties, the defendant was required to furnish, and for which plaintiff was forced to pay. The several items of damage which went to make up the sum of $850 were alleged. The defendant answered by general denial and by special pleas, claiming credit for various amounts paid plaintiff, and paid for material which, under the contract, plaintiff was required to furnish, and also for amounts averred to be the difference in value between material furnished by the plaintiff and materials which he was required to furnish under the terms of the contract. He also pleaded that the contract provided that plaintiff should pay to the defendant the sum of $3.50 per day for each day that the building remained unfinished after the date specified in the contract for its completion, and that the building had remained unfinished for 205 days after said date, and defendant was therefore entitled to recover of plaintiff on account of such delay the sum of $717.50. He further pleaded: "Defendant further shows to the court that the contract sued on herein by the plaintiff contains the following provisions: 'Art. 5. Should the contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, such refusal, neglect, or failure being certified by the architect, the owner shall be at liberty, after three (3) days' written notice to the contractor, to provide any such labor and materials, and to deduct the cost thereof from any money then due or thereafter to become due to the contractor under this contract; and, if the architect shall certify that such refusal, neglect, or failure is sufficient ground for such action, the owner shall also be at liberty to terminate the employment of the contractor for the work and to enter upon the premises and take possession, for the purpose of completing the work comprehended under this contract, of all materials, tools, and appliances thereon, and to employ any other person or persons to finish the work and to provide materials therefor, and, in case of such discontinuance of the employment of the contractor, he shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the owner, in finishing the work, such excess shall be paid by the owner to the contractor, but, if such expense shall exceed such unpaid balance, the contractor shall pay the difference to the owner. The expense incurred by the owner as herein provided either for furnishing materials or for finishing the work, and any damage incurred through such default, shall be audited and certified by the architects, whose certificate thereon shall be conclusive upon the parties.' Defendant further shows to the court that the plaintiff neglected to supply a sufficiency of properly skilled workmen, and failed in all respects to prosecute

the work with promptness and diligence, which neglect and failure was certified to defendant by the architect, and defendant gave written notice thereof to plaintiff, and said architect certified to defendant that such neglect and failure on the part of the plaintiff was sufficient ground to authorize defendant to terminate the employment of the plaintiff for the said work. Defendant further shows to the court that thereafter, to wit, about the 7th day of June, 1906, plaintiff of his own motion discontinued. work under said contract, and notified defendant and his architect that he would not do anything further under said contract, claiming that he had completed said building in accordance with said contract. Defendant further shows to the court that at the time of the abandonment of the work upon said building by the plaintiff the same had not been completed in the manner required by the contract sued on herein, and thereupon defendant was compelled to employ, and did employ, workmen and purchase materials for the finishing and completion of ,said building in the manner provided for by the contract sued on herein at a necessary expense to defendant in the sum of one thousand and fifty-nine and $11/_{100}$ dollars ($1,059.11), which expense was audited and certified by the architect and paid by the defendant." He further pleaded limitation against plaintiff's claim for the $850 before mentioned. In reply to defendant's answer, plaintiff filed a supplemental petition, alleging fraud and collusion on the part of the defendant and his architect in the certificates by the architect as to plaintiff's failure to comply with his contract and the certificates as to the amounts necessarily expended by defendant in completing the building. The cause was tried with a jury, and a verdict and judgment was rendered in favor of plaintiff for the sum of $2,923. On motion for new trial filed by the defendant, plaintiff remitted $328.93 of this amount, and thereupon the trial judge overruled the motion.

Having concluded that the judgment of the court below should be reversed because of errors committed upon the trial, we shall only discuss the assignments of error which we think should be sustained, and those which present questions upon which, in view of another trial, we think it best to express our views, and will not state the facts shown by the evidence further than is necessary to understand the questions presented by the assignments discussed in this opinion. The defendant requested the trial court to instruct the jury to return a verdict in his favor as to all of the items making up the sum of $850, damages claimed by plaintiff before mentioned, on the ground that plaintiff's right to recover each and all of said items was barred by the statute of limitation at the time plaintiff filed his amended petition in which for the first time he asserted the right to recover said damages. The record shows

that these items of damage accrued more than two years before the filing of the amended petition, and that no claim was made therefor in the original petition. The only answer appellee makes to appellant's assignment of error complaining of the refusal of the court to give the requested instruction is that he was prevented from sooner filing his amended petition and setting up his claim for these items by an order of the court made and entered in this cause upon the motion of appellant. The facts in regard to this order are that, after the original petition was filed and defendant had answered herein, a suit was brought in the United States District Court at Houston by a subcontractor under appellee seeking to establish a lien upon appellant's building to secure the payment of an amount claimed to be due said subcontractor for work and material furnished by him to appellee in the construction of appellant's building. After this suit was filed, appellant filed an affidavit in the court below setting up the facts as to the filing of said suit, and moved the court to stay proceedings in this cause until said suit in the United States court should be determined. On this motion the court made and entered the following order: "On this 13th day of April, 1907, there came on to be heard the application of the defendant, praying that this cause be stayed until the final termination of a certain suit pending in the United States court in the Southern district of Texas, upon the equity docket, being No. 80, and entitled Lecoutour Bros. Stair Manufacturing Company v. W. E. Woodruff et al., and the court, having heard said application, is of the opinion that it ought to be granted, and it is therefore ordered that the further progress of the suit in this court, No. 40,712, and entitled W. E. Woodruff v. J. N. Taub, be stayed until the further order of this court." This order was clearly not intended to restrain appellee from filing any additional pleadings he might desire to file in this cause, and it cannot be given that construction. The evident sole purpose of the application was to prevent a trial of this case before the claim of a lien upon appellant's building asserted by the plaintiff in the suit in the federal court was determined, and the order of court restraining "the further progress" of this suit can be given no wider scope, and cannot be held to have tolled the statute of limitation against the filing by appellee of an amended petition setting up claim for damages not made in his original petition. It follows that the trial court erred in refusing the requested instruction.

There is evidence showing that the building remained unfinished for 205 days after the 120 working days allowed by the contract for its completion. Appellee pleaded that he was delayed 150 days by the failure of appellant's architect to furnish the necessary plans and specifications for the work, and, as

before shown, claimed damages for such delay. There was evidence to support this claim. In submitting the issue of appellant's right to recover damages for delay, the trial court charged the jury as follows: "If you believe from the evidence that more than 120 working days elapsed from the date of the written contract to such a time after the date when, as the plaintiff alleges, he was compelled to abandon the work, or, as the defendant alleges, he discontinued same, as would reasonably have been required to complete said work according to the plans and specifications, then you will find for the defendant on his claim for delay for $3.50 per day for each day of said excess. But if you believe from the evidence that such excess, or any part thereof, was caused by the delay mentioned in paragraph 3b thereof, and if you believe that the defendant stated to the plaintiff, during the course of the work, that he would make no claim for the delay, then you will find nothing for the defendant on his claim for the delay." Under an appropriate assignment of error, appellant complains of this charge upon the ground, among others, that it submits to the jury the issue of a waiver by appellant of his claim for damages for delay when there is no evidence to support such issue. The assignment must be sustained. The contract provided, in effect, that, if appellee should be delayed in the construction of the building by causes which under the provisions of the contract would entitle him to an extension of time, no claim for such extension would be allowed, unless made in 24 hours after the delay occurred. Appellee claims in his pleading, and the evidence tends to show, that a large portion of the delay in the construction of the building was caused by the delay of a St. Louis subcontractor to furnish certain millwork ordered by appellee to be used in constructing the building, and this delay was due to the failure of appellant's architect to furnish the necessary plans and specifications. Appellee testified that pending this delay in receiving this millwork he had frequent conversations with appellant in reference thereto; his testimony on this point being as follows: "I had frequent conversations with Mr. Taub about the delay, when I was being delayed, and asked him if he required me to make a claim in writing on account of it, as required in the contract, and he said no, that he understood that the delay was caused by placing the order for the millwork at St. Louis, which was done to give him a better job, that he was living in another house of his own, and that he was more interested in getting a good job than he was in having it finished in the time stated in the contract." This is the only testimony relied on by appellee to sustain the contention that the evidence raises the issue of a waiver by appellant of all claim for damages for delay. We do not think this

134 S.W.—48

testimony can be so construed. The only reasonable inference to be drawn therefrom is that appellant waived the requirement of the contract that appellee, in order to claim an extension of time for delay not chargeable to him, should give written notice of his claim for such extension within 24 hours after the delay occurred. This charge is objectionable for another reason, viz.: The jury were told in effect that if any part of the delay for which appellant claims damages was caused by the delay in receiving the millwork from St. Louis, and that such delay was due to the failure of the architect to furnish the necessary plans and specifications, appellant cannot recover for any delay in the construction of the building. This is manifest error. If the statement of appellant shown by this testimony could be regarded as a waiver of his right to claim damages for delay, it could not possibly be made to apply to any such damages other than those caused by delay in receiving the millwork from St. Louis, and, as before shown, this is by no means all of the delay which might have been found from the evidence and for which appellant claims damages.

Upon the trial of the case appellant offered in evidence the certificates of the architect as to the cost of the completion of the building according to contract after appellee had abandoned his contract. Appellee objected to this evidence on the grounds that said certificates were irrelevant and immaterial as evidence in this case, that they were made after the appellee had discontinued work on the building, and were merely ex parte and unsworn statements of the architect. These objections were sustained by the trial judge, and under an appropriate assignment of error appellant complains of this ruling. Article 5 of the contract, which has been before set out in stating the pleadings of appellant, provides that if "the contractor [appellee] should at any time refuse or neglect to supply a sufficiency of properly skilled workmen or of materials of the proper quality, or fail in any respect to prosecute the work with promptness or diligence or fail in the performance of any of the agreements herein contained, * * * and if the architect shall certify that such refusal, neglect, or failure is sufficient ground for such action, the owner shall also be at liberty to terminate the employment of the contractor for the work, and to enter upon the premises and take possession, for the purpose of completing the work comprehended under this contract, of all materials, tools, and appliances thereon, and to employ any other person or persons to finish the work, and to provide materials therefor, and, in case of such discontinuance of the employment of the contractor, he shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance

of the amount to be paid under this contract shall exceed the expenses incurred by the owner, in finishing the work, such excess shall be paid by the owner to the contractor; but, if such expense shall· exceed such unpaid balance, the contractor shall pay the balance to the owner. The expense incurred by the owner as herein provided, either for furnishing materials or for finishing the work, and any damage incurred through such default, shall be audited and certified by the architects, whose certificate thereon shall be conclusive upon the parties." There was evidence tending to show that appellee had failed in the respects mentioned in this article of the contract, and that the architect had certified that such failure was sufficient ground for the owner to take charge of the work and proceed to complete same in accordance with the contract. Appellant on May 16, 1906, gave appellee the following written notice: "You are hereby notified that because of your failure to comply with your contract and complete my building in the time specified, and because of your failure to meet your claims against you for labor and material, that I will immediately take charge of the job and complete it myself." The evidence shows that after this notice was sent by appellant, appellee, with the consent of appellant, continued to direct the workmen who were engaged upon said building until June 7, 1906, when because of a disagreement between him and the architect he ceased to have any further connection with the work. The work was completed under the direction of the architect by workmen employed by appellant, and the certificates offered in evidence were certificates of the architect as to the cost of completing the work according to contract. We think the evidence is sufficient to show that appellee's contract was forfeited by the architect under the provisions of the contract, and that, if the architect acted in good faith and without collusion with the owner, his certificates as to the cost of completing the work would, under the terms of the contract, be conclusive. McKenzie v. Barrett, 43 Tex. Civ. App. 451, 98 S. W. 230.

The issue of bad faith on the part of the architect was raised by the pleading and evidence, but was not submitted to the jury. If upon a proper submission the jury should find that the architect acted arbitrarily and in bad faith in declaring the contract forfeited or in making his certificates of the cost of completing the work, such certificates should not be considered by the jury, but in determining the question of whether appellee was entitled to recover anything upon his contract they should only consider the sworn testimony of the witnesses as to the reasonable cost of completing the work.

The objection of the appellant to the testimony of the witness Hagerman as to how the work on appellant's building was done should have been sustained. The testimony was merely the opinion of the witness, and, as he was not shown to have been an expert, his opinion as to the character of the work was clearly inadmissible.

Appellee, as before stated, claimed compensation for extra work which he alleged was made necessary because of errors in the specifications furnished him by the architect. The contract provided that no .changes or alterations should be made in the work shown or described by the drawings and specifications except upon a written order of the architect, and that, when so made, the value of the work added should be computed by the architect. Under this provision of. the contract, appellee would not be entitled to compensation for extra work in making changes in the plans and specifications, unless such changes were made on the written order of the architect, and then only to the value of such extra work computed by the architect, unless the jury should find from the evidence that the architect acted arbitrarily and in bad faith in computing or refusing to compute the value of such extra work.

The paragraphs of the court's charge complained of by the twenty-seventh and twenty-eighth assignments of error are predicated upon the assumption that the appellee was entitled to recover the reasonable value of such extra work without regard to the issue of bad faith on the part of the architect, and are therefore erroneous.

For the errors indicated, the judgment of the court below is reversed and the cause remanded.

Reversed and remanded.