### DANIELS et al. v. FRANKLIN et al.
### (No. 9646.)

(Court of Civil Appeals of Texas. Fort Worth. May 21, 1921. Rehearing Denied July 2, 1921.)

1. **Appeal and error ⊜⟹768 — Statements in brief not controverted taken as true.**

The appellate court is authorized to accept as true statements in briefs not controverted by the opposing parties.

2. **Trial ⊜⟹269—Omission of judge to precede signature to requested charge with word "given" or "refused" held inadvertent.**

Omission of trial judge to precede his signature to a requested special charge with either the word "Given" or "Refused" held merely an inadvertent omission, inasmuch as it appeared to have been submitted.

3. **Trial ⊜⟹356(1)—Judgment cannot be entered where jury fails to answer material issues.**

In cases submitted to a jury on special issues, it is error to render judgment on their verdict where the jury fails to answer issues that are material in a determination of the controversy.

4. **Contracts ⊜⟹287(2)—Conclusion of architect only avoided where he acted capriciously, arbitrarily, or fraudulently.**

Where a builder and contractor by their written agreement make an architect the judge of the proper performance of the contract, neither can avoid his conclusion on the subject without showing that he acted capriciously, arbitrarily, or fraudulently, but to be conclusive an architect's certificate must have been delivered in good faith, and in the absence of gross ignorance, carelessness, or indifference as will amount to a fraud upon the builder.

5. **Trial ⊜⟹365(1)—Answer to one issue held not answer to another.**

In an action against builder to recover for plumbing under an agreement whereby certificate of architect was to be conclusive, an answer of the jury to a special issue that the delivery of a certificate by the architect was not pursuant to any conspiracy between him and the plaintiffs was not an answer to another special issue as to whether, in the delivery of the certificate, the architect acted under circumstances of such gross ignorance as amounted to a fraud upon the builder.

6. **Trial ⊜⟹232(2)—Charge on special issues held misleading.**

In an action by plumbers against builder to recover for plumbing under a contract,

whereby certificate of architect was to be conclusive as to the completion of the contract, an instruction explanatory of special issue that "a conspiracy as that term is herein used means an agreement entered into between two or more persons to do or not to do some particular thing" was one that may have misled the jury into believing that to answer an issue as to whether or not there was a conspiracy between plaintiffs and the architect in the affirmative there must be evidence to the effect that there was an actual formal agreement, whereas it would be sufficient if the agreement could be implied from the circumstances shown in the proof.

**7. Appeal and error ⬅1070(2)—Failure of jury to answer special issue held not immaterial.**

In an action by plumbers against builder to recover under a contract whereby certificate of architect was to be conclusive upon both parties as to the completion of the work, *held*, under the evidence, that an answer to a special issue that the delivery of the certificate by the architect was not pursuant to any conspiracy between him and the plaintiffs did not render immaterial failure to answer the special issue as to whether in the delivery of the certificate the architect acted under circumstances of such gross negligence as amounted to a fraud upon defendants.

### On Motion for Rehearing.

**8. Appeal and error ⬅264—Rule respecting exceptions in lower court to answer to special issue only intended to aid court.**

Rules bearing upon the taking of exceptions to the failure of the jury to answer special issues have been promulgated for the purpose of aiding the courts in an orderly disposition of their business, and to conserve time, but nothing therein precludes the appellate court from considering an assignment because of some technical objection in the manner of its presentation.

**9. Appeal and error ⬅835(2)—Objection to assignment not raised on original hearing waived.**

An objection on motion for rehearing that the appellate court was without authority to consider the assignment of error upon which judgment was reversed for the reason that the appellants failed at the trial in excepting at a proper time was waived where, on the original hearing, appellees, without objection to the assignment endeavored to answer it on its merits.

Appeal from District Court, Eastland County; Geo. L. Davenport, Judge.

Suit by the Franklin Plumbing Company, a partnership composed of R. E. Franklin and others, against G. W. Daniels and another. Judgment for plaintiffs, and defendants appeal. Reversed and remanded.

Butts & Wright, of Cisco, for appellants. Kirby, King & Keeble, of Abilene, for appellees.

CONNER, C. J. This suit was instituted by the Franklin Plumbing Company, a partnership composed of R. E. Franklin and others, against G. W. Daniels and C. H. Daniels, to recover the contract price for certain plumbing alleged to have been installed by the plaintiffs in the Daniels Hotel at Cisco, Tex. The contract declared upon was in writing, and provided that the plumbing company was to furnish the material and install all plumbing in the building. It was further provided that the material put in and work done should be under the supervision of R. S. Glenn, an architect, and that the decision of the said R. S. Glenn as to the character of the material and work should govern and be final. The plaintiffs alleged that they complied with their part of the contract, and had completed the plumbing to the satisfaction of the architect, who had issued his final certificate as follows:

"Franklin Bros. have finished their contract on the hotel building and you are now due them the balance of their money according to the contract."

The certificate was presented to the defendants and a demand made for final settlement, which was refused, whereupon this suit was instituted.

The defendants, by their first original answer, upon which they went to trial, pleaded a general denial, and specially denied that the plaintiffs had complied with their contract, specifying numerous and apparently material instances in which the work done was not as provided for in the contract, and further alleged that the certificate of the architect declared upon by the plaintiffs had been delivered to them as result of a conspiracy between the plaintiffs and the architect, entered into for the purpose of defrauding the defendants, or, if not the result of a conspiracy, it was issued and delivered to the plaintiffs by the architect through such gross negligence or gross ignorance on the part of the architect as amounted to a fraud upon these defendants, and that at the time of the delivery of the certificate to the plaintiffs they well knew that the workmanship and material of said plumbing system was not in accordance with the terms and conditions of the contract entered into between the parties.

The case was submitted by the court to a jury, upon special issues, which, together with the answers of the jury thereto, in so far as pertinent, are as follows:

"(1) Did the plaintiffs herein, Franklin Plumbing Company, or any member of said firm, enter into a conspiracy with R. S. Glenn to cheat and defraud the defendants C. H. and G. W. Daniels in connection with the plumbing job on the building in controversy? Answer: No.

"(2) Was the plaintiff herein, Franklin Plumbing Company, guilty of any such gross mistakes in installing the plumbing job as to amount to a fraud on the rights of the defendants C. H. and G. W. Daniels? Answer: ———. .

"(3) Now in the event you have answered questions 1 and 2 'Yes,' and only in that event, you will pass to a consideration of the following questions herewith, but if you have answered said questions 1 and 2 'No,' then you will not consider or answer the next question.

"Was the plumbing in the hotel building in question installed and completed substantially as called for by the contract with Franklin Plumbing Company? Answer: ———."

"(8) You are instructed that 'gross negligence' is that entire want of care which would raise a presumption of a conscious indifference to the consequences. Bearing in mind the foregoing definition of 'gross negligence,' you will answer the following question 'Yes' or 'No': Was the architect, R. S. Glenn, guilty of gross negligence in delivering to plaintiffs the certificate showing that plaintiffs had completed their contract to install the plumbing in defendants' building, and that said plumbing had been installed in compliance with the contract? Answer: ———."

In this connection, the court charged that:

"A 'conspiracy,' as that term is herein used, means an agreement entered into between two or more persons to do or not to do some particular things."

A number of other special issues were submitted, but not answered, or, if answered, are not material in the disposition of this case, and we therefore omit copying them.

Upon the incoming of the verdict, the court, over the objection of the defendants, entered a judgment in behalf of the plaintiffs for the sum of $3,511.41, as the balance due the plaintiffs upon their contract, and from this judgment the defendants have appealed.

[1, 2] The principal questions presented by the assignments of error to the judgment are that the court erred in rendering the judgment because of the failure of the jury to answer special issue No. 2, and because of the failure of the jury to answer special issue No. 8, last above quoted. In reply, appellees insist that "gross mistakes," as submitted in special issue No. 2, were not pleaded by the defendants, and that therefore the failure of the jury to answer this issue, if erroneous, is not available. We have not taken the time to read the voluminous pleadings in order to ascertain whether or not "gross mistakes" were pleaded by the defendants, inasmuch as under the rules which govern this court we are authorized to accept as true statements in briefs not controverted by the opposing parties, and appellants have not undertaken to correct the misstatement, if any, of the appellees. It might be observed, however, in this connection, that the court, in concluding to submit the issue, must have interpreted the pleadings as presenting the issue of gross mistakes. But, however this may be, there remains the objection to the judgment for the want of an answer to special issue No. 8. To the assignment directed to this failure, appellees urge that this issue appears in a special charge requested, and that the record fails to affirmatively show that it was given. The special charge, as requested, is as above quoted, and is merely signed by the district judge, who omitted to precede his signature with either the word "given" or "refused." This omission, however, we think must be accepted as one that was merely inadvertent, inasmuch as upon an inspection of the judgment of the court the issue, as we have quoted it, appears to have been submitted. We will therefore address ourselves to the question of whether or not the court should have entered a judgment for the plaintiffs, in the absence of an answer by the jury to special issue No. 8.

[3, 4] It is well settled that in cases submitted to a jury upon special issues it is error to render judgment upon their verdict where the jury fails to answer issues that are material in a determination of the controversy. Bargna v. Bargna, 127 S. W. 1157; Garlitz v. Runnels County Nat. Bank, 152 S. W. 1151, and cases therein cited. Indeed, this proposition is not controverted by appellees, but it is insisted that inasmuch as it is undisputed that architect Glenn in fact delivered the certificate hereinbefore quoted, and inasmuch as the jury in answer to special issue No. 1 found that the certificate had not been delivered pursuant to any conspiracy between the Franklin Plumbing Company and R. S. Glenn, that the failure to answer issues Nos. 2 and 8 was immaterial. But upon a consideration of the record, we feel unable to concur in the contention. It is true, as has been frequently decided, that where a builder and contractor by their written agreement make an architect the judge of the proper performance of the contract, neither can avoid his conclusion on the subject without showing that he acted capriciously, arbitrarily, or fraudulently. See Carnegie Public Library Ass'n v. Harris, 43 Tex. Civ. App. 165, 97 S. W. 520; Kettler Brass Mfg. Co. v. O'Neil, 57 Tex. Civ. App. 568, 122 S. W. 900; Buchanan & Gilder v. Gibbs, 156 S. W. 914; Southern Real Estate v. Bankers' Security Co. (Mo.) 184 S. W. 1030; Garrett v. Dodson, 199 S. W. 675; Kihlberg v. U. S., 97 U. S. 398, 24 L. Ed. 1106; Martinsburg & Potomac Ry. Co. v. March, 114 U. S. 549, 5 Sup. Ct. 1035, 29 L. Ed. 255.

All of these cases which have been cited in behalf of the appellees, as well as the following ones cited in behalf of the appellants, recognize the very important distinction that the architect's certificate, to be conclusive, must have been delivered in good faith and

in the absence of such gross ignorance, carelessness or indifference as will amount to a fraud upon the builder. See Taub v. Woodruff, 63 Tex. Civ. App. 437, 134 S. W. 750; Buchanan & Gilder v. Gibbs, 156 S. W. 914; Kettler Brass Mfg Co. v. O'Neil, 57 Tex. Civ. App. 568, 122 S. W. 900; Brin v. McGregor, 45 S. W. 923; Boettler v. Tendick, 73 Tex. 488, 11 S. W. 497, 5 L. R. A. 270; Boston Store v. Schleuter, 88 Ark. 213, 114 S. W. 242; Perkins v. Locke, 27 S. W. 783; M. & P. Ry. Co. v. March, 114 U. S. 549, 5 Sup. Ct. 1035, 29 L. Ed. 255; 9 Corpus Juris, pp. 776, 828; 6 R. C. L. p. 964; Chandler v. Wheeler (Tenn. Ch. App.) 49 S. W. 279.

[5, 6] The answer of the jury to special issue No. 1, that the delivery of the certificate under consideration by the architect Glenn was not pursuant to any conspiracy between him and the appellees, is by no means, as we think, a plain answer to the question of whether, in the delivery of the certificate, Glenn acted under circumstances of such gross negligence as amounted to a fraud upon appellants. To repeat, the issue was:

"Did the plaintiffs herein, Franklin Plumbing Company, or any member of said firm, enter into a conspiracy with R. S. Glenn to cheat and defraud the defendants C. H. and G. W. Daniels in connection with the plumbing job on the building in controversy?"

As explanatory of this issue, and as pertinent thereto, the court gave the following instruction as to the meaning of the vital word in the issue, viz.:

"A 'conspiracy' as that term is herein used means an agreement entered into between two or more persons to do or not to do some particular thing."

In the light of this charge, it is not at all improbable that the jury may have understood that to answer the issue in the affirmative there must be evidence to the effect that there was an actual formal agreement entered into between Glenn and the contractors, whereas it would be sufficient if the agreement could be implied from the circumstances shown in the proof, and there is evidence in the case tending to show that before the delivery of the certificate both the contractors, Franklin Plumbing Company, and Glenn, the architect, were engaged in controversies with appellants over the payment of their several demands. We are unwilling, therefore, as indicated, to accept the answer of the jury to issue No. 1 as a sufficient answer to issue No. 8, for there is evidence, as it seems to us, which at least tends to show numerous material failures of the contractors to comply with the provisions of the contract in the installation of the plumbing, and we think the jury should have determined whether these failures were of such a character as showed such a degree of indifference, carelessness, or negligence on the part of Glenn as to operate as a fraud upon appellants. For instance, one of appellants, G. W. Daniels, testified to the effect that none of the pipes in the lower part of the building were inclosed in "chases," as provided by the contract, that they were all suspended from the ceiling or standing on the inside of the building next to the wall; that the pipes had not been tested as specified in the contract, and many of them leaked; that he had never been able to stop all of the leaks; that water runs out of the joints of the pipes in the lobby; that there were closets that had not been installed; that under the lavatories several connections had been made with putty; that the fixtures had been insecurely fastened to the walls; that the walls and foundation of the building are cracked and settling all the time; that the building was cracked from top to bottom, and was cracked before Mr. Glenn turned it over to him; that he did not think Mr. Glenn was there upon the building over 50 per cent. of the time while the building was going on.

Mr. Glenn himself testified that:

"All pipes are not concealed in that building as required by the contract. * * * I should say a half dozen required to be concealed are left exposed. * * * The contract did provide for circulating hot water system on both floors. * * * The special connection from the water main to the fire line, provided for in the contract, was not installed. It was not installed like it was specified to be done. * * * Those pipes or stacks on the roof were not finished off with hubs. Those pipes or stacks did not extend six inches above the fire walls on that building. The contract requires them to extend six inches above the roof; that is what the contract says. They didn't extend above the fire walls. It is not necessary for them to. It is a fact that the plumbing contract required that when the contract was completed the system be tested out in my presence with either ether or peppermint. * * * The test was not made with either ether or peppermint because we had had a better test (water with which the test was made). * * * The catch basin was not installed in just the size called for by the specifications. It was a smaller box, I don't know just the size. It was a small matter; didn't amount to much. The plumbing specifications provided that slop sinks, wash racks, or floor drains and catch basins should be revented the same as water closets and urinals. I don't know whether that was done. * * * All pipes or stacks passing through the roof of the building were not flashed with sheet lead of 2¼ pounds per square foot or 10 ounce copper," etc.

[7] The witness Glenn gave explanations for the departures from the contract in his testimony, but the reasonableness of such explanations was for the jury, and we have undertaken to set out just enough of the testimony to illustrate our conclusion that the

answer of the jury to special issue No. 1 should not be accepted as rendering immaterial the failure of the jury to answer special issue No. 8. Particularly, in view of the further fact that the jury also failed to answer special issue No. 3, which called for a conclusion of whether the plumbing in the building had been installed and completed substantially as called for by the contract. It would seem to be quite plain by the failure of the jury to answer special issue No. 3 that they were not satisfied by the evidence that the building had been so completed, and that by their failure to answer special issue No. 8 they were not satisfied to give a negative answer to the inquiry whether Glenn had been guilty of such gross ignorance or carelessness as would amount to or operate as a fraud upon appellants.

We conclude that for the reasons indicated the judgment must be reversed, and the cause remanded.

### On Motion for Rehearing.

[8, 9] Appellees present an insistent motion for rehearing, in which they contend that we were without authority to consider the assignment of error upon which the judgment below was reversed, for the reason that appellants failed at the time of the incoming of the verdict to except thereto because of the jury's failure to answer the issue. The record fails to show that appellants were present at the time the verdict was returned, but does show that in their motion for a new trial complaint of the failure of the jury to answer the issue was made. But if it be admitted that ordinarily an exception to the consideration of an assignment on the ground stated would be good, we think it too late to now entertain it with favor. On the original hearing no objection of any kind was made to our consideration of the assignment; but appellees endeavored to answer it upon its merits, with the result that we, in fact, did consider and determine the question presented as shown in our original opinion. The rules bearing upon the subject have been promulgated for the purpose of aiding the courts in the orderly disposition of their business and to conserve time, but nothing therein absolutely precludes our consideration of an assignment because of some technical objection in the manner of its presentation, and, this court having already considered the assignment without objection on appellees' part, will not now reverse our action on the grounds stated.

Appellees in their motion do not attack the conclusion we reached upon the consideration of the assignment, and having, as we think, waived the objection now presented, the motion for rehearing will be overruled.